FILED

2009 Jul-30  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ] ] ] | |
| Plaintiff/Intervenor Defendant, | ] ] ] | |
| vs. | ] ] | |
| SPECIALTY FOUNDRY PRODUCTS, | ] ] | 7:08-cv-01412-LSC |
| Intervenor Plaintiff, | ] ] | |
| vs. | ] ] | |
| OCTAVIA KELLY, PRESTON PARNELL, KELLY PARNELL, KATHLEEN BOWDEN, AND GREG BOWDEN, L.L.C., | ] ] ] ] ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration motions for summary judgment, filed

by Zurich American Insurance Company ("Zurich") and Specialty Foundry

Products ("Specialty Foundry").   (Docs. 28 & 29)   Zurich filed an

Interpleader Complaint in this Court on August 7, 2008 (Doc. 1).   In that

complaint, Zurich sought to deposit one million dollars ($1,000,000.00) and receive a declaratory judgment that it had no further liability to individuals involved in an accident with an employee of its insured, Specialty Foundry. On September 29, 2008, Specialty Foundry sought to intervene for the purpose of resolving a dispute between it and Zurich regarding the extent of coverage for Specialty Foundry under a Commercial General Liability policy that it held in addition to the Business Auto Policy that was the subject of the interpleader action.  The parties agreed to forgo trial and submit these concurrent motions for summary judgment to resolve the case. The issues raised in these motions for summary judgment have been briefed by the parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Specialty Foundry's motion will be DENIED while Zurich's motion will be GRANTED.

II.    Facts.[1]

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

On January 25, 2007, Benjamin Ronald Stough ("Stough"), an employee of Specialty Foundry acting in the course of his employment, was involved in an automobile accident in Tuscaloosa County, Alabama.  The accident involved three people other than Stough—Kathleen Bowden ("Bowden"), Preston Parnell ("Parnell"), and Octavia Kelly ("Kelly").  These individuals or their spouses filed separate suits in the Circuit Court of Tuscaloosa County, Alabama.

At the time of the accident, Specialty Foundry was insured by Zurich under two policies.  The first was a Business Auto Policy ("BAP"), policy number BAP 9025753-03, with effective dates of 01/18/07 to 01/18/08 with a policy limit of $1 million per "any one accident."  The second was a Commercial General Liability ("CGL") policy, policy number 9025750-03, with effective dates of 01/18/07 to 01/18/08 and an "each occurrence" limit of $1 million and a general aggregate limit of $2 million.

Zurich promptly provided a defense to its insured, Specialty Foundry, though the parties dispute whether this defense was offered under the BAP or CGL.  On June 27, 2008, counsel for Specialty Foundry, Thomas Dazzio, Jr. ("Dazzio"), wrote to Zurich's claims adjuster, Jackie Ward ("Ward"),

regarding litigation with two of the injured parties, Parnell and Bowden. Dazzio informed Ward that Parnell and Bowden had made a settlement offer of $2 million, and that in response Specialty Foundry was making a formal demand that Zurich pay that amount to the parties.

Ward responded with a letter dated July 2, 2008, in which she stated Zurich's position that there was no coverage under the CGL due to an auto exclusion contained in that policy.  On July 7, 2008, Specialty Foundry replied by letter, contending that this was the first time that Zurich had disclaimed liability or given notice of a defense of non-coverage under the CGL and demanding again that Zurich pay $2 million in policy limits.  On July 9, 2009, Ward sent another letter to Specialty Foundry stating Zurich's position that as it had undertaken a defense of Specialty Foundry under the applicable policy it did not consider it necessary to deny coverage under the CGL.

On August 7, 2008, Zurich filed this action in the nature of an interpleader and tendered into the registry of this Court $1 million.  It named as Defendants all of the Plaintiffs in the Bowden, Parnell, and Kelly lawsuits pending in Tuscaloosa County.  On September 29, 2008, Specialty

Foundry intervened in this action, claiming that it is entitled to an additional $1 million under the CGL.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.

1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [his] own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th

Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh

the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 249 (1986).  However, judges are not "required to submit a

question to a jury merely because some evidence has been introduced by

the party having the burden of proof, unless the evidence be of such

character that it would warrant the jury finding a verdict in favor of that

party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448

(1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

IV.    Discussion.

The heart of this matter is a dispute between the parties as to whether coverage is due under the CGL in addition to that of the BAP.  Zurich claims that the CGL doesn't provide coverage and offers a multi-tiered defense of that position.  First, Zurich claims that the CGL contains an unambiguous auto exclusion.  In the face of Specialty Foundry's argument that Zurich waived this defense, Zurich claims that such a position would impermissibly create coverage where none previously existed.  Finally, Zurich contends that even if a finding of waiver were appropriate, an "anticumulation clause" contained within the BAP only allows for payment of insurance under one policy.

A.    The Auto Exclusion.

Under Alabama law, insurers are permitted to exclude from coverage incidents involving automobiles to the extent that such exclusions are not

ambiguous.  *See St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental health*

*Center*, 595 So. 2d 1375 (Ala. 1992).  The CGL policy issued by Zurich

contains the following clause:

> COVERAGE A--BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> \*   \*   \*
> 2.  Exclusions
> \*   \*   \*
> g.  Aircraft, Auto or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(Doc. 28, Ex. A-2 at 22.)

The CGL, therefore, unambiguously states that accidents involving

automobiles are excluded from coverage.  As an initial matter, then, it

would seem that Zurich is correct that there is no coverage under the CGL

policy for the accident at bar.  Specialty Foundry argues, however, that

Zurich undertook its defense under the CGL without a notice of reservation of rights and therefore has waived any exclusions that might apply.

To consider this position, we must first determine whether Zurich undertook the defense of Specialty Foundry under that policy.  It is undisputed that Zurich has taken up and maintains a defense of Specialty Foundry, though Zurich insists that this defense was provided under the BAP rather than the CGL.  Specialty Foundry offers two pieces of evidence to oppose this assertion.   The first is a General Liability Notice of Occurrence/Claim that appears to have been  submitted to Zurich by Special Foundry on February 2, 2007.  (Doc. 30, Ex. K.)  This document, describing the accident in question and submitted by Gary K. Yarbrough of JYC Insurance ("JYC"), references a policy with the number GL0902575001.[2]

There are several problems with binding Zurich based on this document.  First, it was submitted by JYC Insurance, not Zurich.  JYC is an "independent insurance company" that Specialty Foundry employed at the time of the accident.  (Doc. 30, Ex. L, Deposition of Caleb McFarland Herndon, III at 46-47).   Although there are instances in which an

---

[2]As noted above, the policy number for the CGL is GL09025750-03.

independent agent may be an agent for an insurer, typically "[a]n independent agent or broker is usually not an agent for the insurer at all; rather, he is the agent of the insured." *Washington Nat'l Ins. Co. v. Strickland*, 491 So. 2d 872, 875 (Ala. 1985). Clearly in this instance, JYC was acting as an agent of Specialty Foundry and was not capable of binding Zurich simply by submitting a claim under the CGL policy.[3]

Furthermore, under Alabama law, the duty of an insurer is to review the documents submitted by the insured and then to investigate those claims. *United Ins. Co. of Am. v. Cope*, 630 So. 2d 407, 412 (Ala. 1993). That investigation, and not the documentation submitted by the insured, determines the insurer's liability under its policies. That Zurich owed Specialty Foundry coverage under the BAP is evident from the documentation submitted to it and the investigation that followed, and Zurich acted accordingly by providing a defense. The submissions of JYC and Specialty Foundry alone, however, cannot establish that this defense

---

[3] In fact, JYC submitted the document under the wrong policy number, GL0902575001 rather than GL09025750-03. If the mere submission of this document followed by Zurich's assumption of Specialty Foundry's defense could bind Zurich to perform under the CGL regardless of whether the CGL provided coverage, then Zurich would apparently be bound by an earlier policy that was not even in effect at the time of the accident.

was offered under the CGL rather than the BAP.

Next, Specialty Foundry argues that in the deposition of Caleb McFarland Herndon, III ("Herndon"), "Zurich's retained counsel affirmatively stated on the record that Zurich was defending the underlying cases under the Commercial General Liability Policy."  (Doc. 29 at 7.)  It is true that in Herndon's deposition, an attorney, Stanley A. Cash ("Cash"), stated that "we are defending him under [the general liability policy], it is not the auto."  (Doc. 30, Ex. L, Deposition of Caleb McFarland Herndon, III at 54-55).

Specialty Foundry's description of Cash, however, is misleading.  The deposition in question was taken as part of the underlying litigation between Kelly and Specialty Foundry.  Zurich is not a party to this litigation, and despite Specialty Foundry's assertions in its motion for summary judgment, Cash is not "Zurich's retained counsel" but rather is the counsel retained by Zurich for Specialty Foundry.  *See* Doc. 31, Exs. B & C.

Under Alabama law, an attorney in an insurance litigation has duties to both the insurer and the insured, particularly prior to the commencement of litigation, and as long as no conflict exists between the two, both should

be treated as his clients.  *See Mitchum v. Hudgens*, 533 So. 2d 194, 198 (Ala. 1988) (citations omitted).  It is therefore possible that, before Zurich and Specialty Foundry's interest came into conflict, Cash represented both parties in some way.

But even if Cash had fiduciary responsibilities to both Zurich and Specialty Foundry, it takes a further step to bind Zurich by the statements of its attorney.  An attorney may bind its client "by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."  Code of Ala. § 34-3-21.  No such agreement binding Zurich has been introduced into evidence in this case.  Even if there were such an agreement, the admissions of attorneys can only bind their clients in certain narrow circumstances.  Alabama courts have stated, "The admissions of attorneys of record bind their clients, in all matters relating to the progress and trial of the cause; but to this end, they must be distinct and formal or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice or of dispensing with the formal proof of some fact at the trial."  *Thompson Foundry & Machine Works v. Glass*, 136 Ala. 648, 656 (Ala. 1903).  To the

extent that Cash made statements as a representative of Zurich, they were not made in such a way that would then bind Zurich.

Other than its own submissions and the statements of counsel in the underlying cases,[4] Specialty Foundry has shown no evidence that Zurich took up its defense under the CGL.  Since there are two policies at issue in this case, the Court cannot simply assume that Zurich undertook the defense of Specialty Foundry under the CGL.  The Court must then look to see whether Zurich had a responsibility to affirmatively disclaim liability under the CGL and if by failing to do so, it is estopped from relying on the auto exclusion and is now forced to indemnify Specialty Foundry under that policy.

While Zurich may not have expressly affirmed that it was defending under the CGL, it did not deny coverage under that policy or issue a reservation of rights regarding it.  Specialty Foundry contends that Zurich therefore may not rely on the auto exclusion contained in the CGL policy.

_____

[4] Specialty Foundry has also provided a letter from Cash to Zurich's Ward summarizing the deposition testimony of Herndon and including a reference to the CGL policy.  At most, this letter would indicate that Zurich should have known by March 11, 2008, that Specialty Foundry believed that the CGL policy was in play.  It is not apparent how this letter could have bound Zurich to defend under the CGL.  At worst, it indicates that Zurich should have notified Specialty Foundry earlier than its July 2, 2008 letter that no coverage was available under the CGL.

The general rule in Alabama is that if an insurance company takes up the defense of an insured, it is estopped from then withdrawing that defense in the absence of a reservation of rights. *Burnham Shoes, Inc. v. West American Ins. Co.*, 504 So. 2d 238, 242 (Ala. 1987) ("Thus, under Alabama law, if an insurer does, in fact, undertake to defend an insured without reserving the right to withdraw its defense, it thereby waives its right to do so."); *see also, Campbell Piping Contractors, Inc. v. Hess Pipeline Co.*, 342 So. 2d 766, 769-72 (Ala. 1977). This doctrine is "founded upon principles of equity, morality and justice. When a liability insurer, by assuming the defense of an action leads one to believe liability to do so is not denied, it would be unfair to subsequently permit that insurer to deny coverage, when, without reservation and with knowledge, it assumes exclusive control of the defense of an action." *Campbell Piping Contractors, Inc.*, 342 So. 2d at 770 (citations omitted).

Equally well established, however, is the doctrine that "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel." *Home Indem. Co. v. Reed Equipment Co.*, 381 So. 2d 45, 51 (Ala. 1980). Alabama courts have therefore concluded that when a "coverage

provision or an exclusion is unambiguous, it is not subject to waiver or estoppel." *Woodall v. Alfa Mut. Ins. Co.*, 658 So. 2d 369, 372 (Ala. 1995). In *McGee v. Guardian Life Insurance Company*, the Alabama Supreme Court stated, in reference to life insurance,

> The substance of the doctrine of waiver as applied in the law of insurance is, that if the insurer, with knowledge of facts which would bar an existing primary liability, recognizes such primary liability by treating the policy as in force, he will not thereafter be allowed to plead such facts to avoid his primary liability . . . This doctrine, however, cannot be invoked by the insured to create such primary liability. To create such primary liability all the elements of a binding contract are essential.

472 So. 2d 993, 995-96 (Ala. 1985) (citations omitted).

There is an inherent tension between these two positions. In *Campbell Piping* and *Burnham Shoes*, coverage appears to have been created by estoppel where it would not have otherwise existed. In *McGee* and other cases, the Alabama Supreme Court has explicitly stated that coverage cannot be created by estoppel. This apparent tension is illusory, however, as under Alabama law, the duty to provide a defense is often broader than the duty to indemnify. *Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) ("It is well established that the insurer's duty to

defend is more extensive than its duty to pay."); *Chandler v. Alabama Municipal Ins. Co.*, 585 So. 2d 1365, 1367 (Ala. 1991).  As such, the strict rules that might apply to the duty to defend cases may not reach matters involving indemnification.   The 11th Circuit recognized this important distinction in *Integrity Insurance Company v. King Kutter, Inc.*, 866 F.2d 408 (11th Cir. 1989).  The court stated,

> In both *Campbell Piping* and *Burnham Shoes*, the Alabama Supreme Court cited with approval the general rule that where an insurance company assumes the defense of an action without a reservation of rights and with full knowledge of facts that would have permitted it to deny coverage, the company may be estopped from subsequently raising the defense of *non-coverage*. Although the term 'non-coverage' is broad enough to encompass a right to indemnification, neither *Burnham Shoes* nor *Campbell Piping* is a right to indemnification case where the putative insured's claim for indemnification arises solely from the insurer's undertaking the putative insured's defense.

*Id.* at 412.

This distinction between providing a defense and providing indemnification is particularly relevant to the present matter.  Specialty Foundry attempts to avoid the doctrine that estoppel cannot be used to create coverage by relying on cases involving an insurance company's

defense of an insured without issuing a reservation of rights.  Even if the

principles of equity derived from cases regarding defense of an insured were

applicable here, this matter differs factually from those cited above in that

there are two insurance policies involved, not one.  It is undisputed that

Zurich owes Specialty Foundry a defense in the underlying state cases under

the BAP.  Furthermore, Zurich has deposited the $1 million owed under that

policy in the Court Registry pending the outcome of those state actions.

This is not a case where Zurich, having provided a defense to its insured,

now attempts to remove itself completely from the scene.

    This drains much of the force from Specialty Foundry's arguments that

equity requires this Court force Zurich to provide coverage under the CGL

in addition to the BAP.  As discussed above, the doctrine of estoppel is

"founded upon principles of equity, morality and justice."     *Campbell*

*Piping Contractors, Inc.*, 342 So. 2d at 770 (citations omitted).  Given the

facts of the present case, equity cuts in favor of the insurer.  Zurich has

taken up the defense of its insured.  It has done so with the knowledge that

Specialty Foundry holds an insurance policy for which coverage is

undeniable.   Zurich is undoubtedly estopped from now attempting to

withdraw that defense.  But to use estoppel to bootstrap the coverage of the CGL, a policy which unambiguously excluded coverage for automobiles when Zurich continues to provide a defense under the BAP, would be "a perversion of an equitable doctrine."  *Kaminer v. Franklin Life Ins. Co.*, 472 F.2d 1073, 1077 (5th Cir. 1973).  Therefore, this Court finds that Zurich may rely on the auto exclusion contained in the CGL.  As that auto exclusion is clear and unambiguous, no coverage is available under the CGL for the underlying state matters.

B.     The Anticumulation Clause.

Zurich argues that, even if it is estoped from invoking the auto exclusion in the CGL, it may nevertheless invoke the anticumulation clause in the BAP.  That clause states,

Section IV – Business Auto Conditions

The following conditions apply in addition to the Common Policy Conditions:

*     *     *

B.     General Conditions

8.     Two or More Coverage Forms or Policies Issued By Us

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

(Doc. 28, Ex. A-1 at 24.)

Under this clause, even if Zurich is estopped from denying coverage under the CGL, the total amount of coverage provided under the two policies could amount to no more than $1 million, the highest applicable limit of either policy.  In order to avoid this limitation, Specialty Foundry would need to show that the CGL is "any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form."  *Id.*

Generally speaking, excess policies provide vertical coverage in excess of the underlying policy's limit.  *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003).  That coverage therefore does not spread horizontally.  In other words, excess insurance will only cover the risks that

the underlying policy also covers.[5]   The CGL, therefore, cannot serve as excess insurance to the BAP.   As discussed above, the CGL contains an explicit auto exclusion, making it clear that the policy is not one designed to supplement Specialty Foundry's auto insurance.   Even if Zurich is estopped from citing the auto clause in the CGL as a defense, the inherent nature of the policy itself does not change.   Estoppel cannot make the CGL a "Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over [the BAP],"[6] particularly when the CGL would provide no coverage for auto accidents in the ordinary instance. (Doc. 28, Ex. A-1 at 24.)   Therefore, even if Zurich must provide coverage under both policies, the aggregate paid under the two policies could not exceed the $1 million already paid into the Court registry.[7]

V.      Conclusion.

        For the reasons stated above, Specialty Foundry's motion for summary

---

[5]   Policies that cover horizontally are often referred to as umbrella policies.  *Id.*

[6] Furthermore, even if the CGL were an excess policy, it was not "specifically issued" to apply as excess coverage over the BAP.

[7] Specialty Foundry also argues that the BAP could apply as excess coverage to the CGL.   Even if this were the case, the same reasoning would still limit the maximum coverage available to $1 million.

judgment is denied and the motion for summary judgment filed by Zurich

will be granted in all respects.  A separate order will be entered.

Done this 30th day of July 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671